Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| SQUARE, INC., RANDY GARUTTI, MARY MEEKER, LAWRENCE SUMMERS, DARREN WALKER, JACK DORSEY, DAVID VINIAR, PAUL DEIGHTON, ANNA PATTERSON, ROELOF BOTHA, JAMES MCKELVEY, AMY BROOKS, and SHAWN CARTER, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Stephen Bushansky ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1.      This is an action brought by Plaintiff against Square, Inc. ("Square" or the "Company") and the members of Square's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Square will acquire Afterpay Limited ("Afterpay") through Square's subsidiary Lanai (AU) 2 Pty Ltd. ("Merger Sub") (the "Proposed Transaction").

2.      On August 1, 2021, Square and Afterpay issued a joint press release announcing that they had entered into a Scheme Implementation Deed dated August 2, 2021 (the "Merger Agreement") to sell Afterpay to Square.  Under the terms of the Merger Agreement, each share of Afterpay common stock will be converted into the right to receive either: (i) 0.375 shares of Square Class A common stock ("New Square Shares"), or (ii) 0.375 CHESS Depositary Interests ("New Square CDIs") representing ownership interest in shares of Square Class A common stock issued by Square pursuant to a Deed Poll to be executed by Square and Merger Sub in favor of all Afterpay shareholders ("Deed Poll") (the "Merger Consideration").  The Proposed Transaction is valued at approximately $29 billion.

3.      On October 5, 2021, Square filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Square stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley"); and (ii) the background of the Proposed Transaction.   Defendants

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Square's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company is headquartered in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Square.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9.     Defendant Square is a Delaware corporation, with its principal executive offices located at 1455 Market Street, Suite 600, San Francisco, CA 94103.  The Company builds tools to empower businesses and individuals to participate in the economy.  Square's common stock trades on the New York Stock Exchange under the ticker symbol "SQ."

10.     Defendant Randy Garutti ("Garutti") has been a director of the Company since July 2017.

11.     Defendant Mary Meeker ("Meeker") has been a director of the Company since June 2011.

12.     Defendant Lawrence Summers ("Summers") has been a director of the Company since June 2011.

13.     Defendant Darren Walker ("Walker") has been a director of the Company since June 2020.

14.     Defendant Jack Dorsey ("Dorsey") is co-founder of the Company and Chairman of the Board, and has been President, Chief Executive Officer ("CEO"), and a director since July 2009.

15.     Defendant David Viniar ("Viniar") is Lead Independent Director and has been a director of the Company since October 2013.

16.     Defendant Paul Deighton ("Deighton") has been a director of the Company since May 2016.

17.     Defendant Anna Patterson ("Patterson") has been a director of the Company since November 2017.

18.     Defendant Roelof Botha ("Botha") has been a director of the Company since January 2011.

19.     Defendant James McKelvey ("McKelvey") is co-founder of the Company and has been a director since July 2009.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

20.     Defendant Amy Brooks ("Brooks") has been a director of the Company since October 2019.

21.     Defendant Shawn Carter ("Carter") has been a director of the Company since May 4, 2021.

22.     Defendants identified in paragraphs 10-21 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

23.     Headquartered in Melbourne, Victoria, Australia, Afterpay is an Australian public company limited by shares and registered in Victoria under Australian law.  Founded in 2014, Afterpay facilitates online commerce between retail merchants and end-customers by allowing its retail merchant clients to offer their customers the ability to buy goods and services on a "buy now, pay later" ("BNPL") basis.  Through the use of Afterpay services and software, end-customers can split their purchases across four installments, generally due in two-week increments, without paying interest or fees (where payments are made on time).  Afterpay's service provides consumers the ability to get desired items now but pay for them later while simultaneously helping merchants increase sales and average order values.  Afterpay pays its retail merchant customers the full order value upfront (less its percentage fee) and assumes non-payment risk from the end-customer.  Should an end-customer using Afterpay services miss a payment, his or her Afterpay account is frozen until such payment is made and capped late payment fees are charged.  Apart from the capped late payment fees, end-customers do not incur additional fees or interest.  Afterpay also operates an online shop directory, which allows consumers to search by product category for stores that offer Afterpay as a payment option.  The shop directory connects consumers seeking to buy products and services using Afterpay with Afterpay merchants.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

24.     Merger Sub is an Australian proprietary company limited by shares and an indirect wholly owned subsidiary of Square.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25.     Square was founded in 2009 to enable businesses to accept card payments, an important capability that was previously inaccessible to many businesses.  As Square grew, it recognized that sellers need a variety of solutions to thrive and saw how it could apply its strength in technology and innovation to help them.  Square has since expanded to provide more than 30 distinct products and services to sellers that help them manage and grow their business.  Similarly, with Cash App, Square has built a parallel ecosystem of financial services to help individuals manage their money.  That includes ways for individuals to invest in stocks and bitcoin, receive their paycheck, tax return, and direct deposit up to two days early, and use Cash Card, a free, customizable debit card to pay online and in stores.  With TIDAL, Square's global music and entertainment platform, Square believes it can provide artists tools to participate in the economy and grow as entrepreneurs.  And finally, Square recently announced a fourth business, TBD, focused on building an open developer platform with the goal of making it easy to create non-custodial, permissionless, and decentralized financial services.  Square's purpose of economic empowerment drives the development of all its products and services.

26.     On August 1, 2021, Square announced its second quarter 2021 financial results.  Gross profit for the second quarter of 2021 increased 91% year over year to $1.14 billion.  Cash App generated gross profit of $546 million, up 94% year over year, and Square's Seller ecosystem generated gross profit of $585 million, up 85% year over year.  Net income for the second quarter of 2021 was $204 million, compared to net loss of $11 million for the second quarter of 2020.  Adjusted EBITDA for the second quarter of 2021 was $360 million compared to $98 million for the second

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

quarter of 2020.  Total net revenue was $4.68 billion in the second quarter of 2021, up 143% year over year.  Transaction-based revenue was $1.23 billion in the second quarter of 2021, up 80% year over year, and transaction-based gross profit was $543 million, up 85% year over year.  Subscription and services-based revenue was $685 million in the second quarter of 2021, up 98% year over year, and subscription and services-based gross profit was $561 million, up 90% year over year.  Adjusted Net Income Per Share ("Adjusted EPS") was $0.66 on a diluted basis based on 523 million weighted-average diluted shares for the second quarter of 2021, representing a $0.48 improvement year over year.

**The Proposed Transaction**

27.     On August 1, 2021, Square and Afterpay issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> Square, Inc. (NYSE: SQ) and Afterpay Limited (ASX: APT) today announced that they have entered into a Scheme Implementation Deed under which Square has agreed to acquire all of the issued shares in Afterpay by way of a recommended court-approved Scheme of Arrangement.  The transaction has an implied value of approximately US$29 billion (A$39 billion) based on the closing price of Square common stock on July 30, 2021, and is expected to be paid in all stock.  The acquisition aims to enable the companies to better deliver compelling financial products and services that expand access to more consumers and drive incremental revenue for merchants of all sizes.  The closing of the transaction is expected in the first quarter of calendar year 2022, subject to the satisfaction of certain closing conditions outlined below.

> "Square and Afterpay have a shared purpose.  We built our business to make the financial system more fair, accessible, and inclusive, and Afterpay has built a trusted brand aligned with those principles," said Jack Dorsey, Co-Founder and CEO of Square.  "Together, we can better connect our Cash App and Seller ecosystems to deliver even more compelling products and services for merchants and consumers, putting the power back in their hands."

> Afterpay, the pioneering global 'buy now, pay later' (BNPL) platform, will accelerate Square's strategic priorities for its Seller and Cash App ecosystems.  Square plans to integrate Afterpay into its existing Seller and Cash App business units, enable even the smallest of merchants to offer BNPL at checkout, give Afterpay consumers the ability to manage their installment payments directly in Cash App, and give Cash App customers the ability to discover merchants and BNPL offers directly within the app.

- 7 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

"Buy now, pay later has been a powerful growth tool for sellers globally," said Alyssa Henry, Lead of Square's Seller business.  "We are thrilled to not only add this product to our Seller ecosystem, but to do it with a trusted and innovative team."

"The addition of Afterpay to Cash App will strengthen our growing networks of consumers around the world, while supporting consumers with flexible, responsible payment options," said Brian Grassadonia, Lead of Square's Cash App business.  "Afterpay will help deepen and reinforce the connections between our Cash App and Seller ecosystems, and accelerate our ability to offer a rich suite of commerce capabilities to Cash App customers."

Afterpay is an industry leader with a best-in-class product and strong cultural alignment with Square. As of June 30, 2021, Afterpay serves more than 16 million consumers and nearly 100,000 merchants globally, including major retailers across key verticals such as fashion, homewares, beauty, sporting goods and more.  Afterpay empowers consumers to access the things they want and need, while allowing them to maintain financial wellness and control.  Afterpay also assists merchants in growing their businesses by helping to drive repeat purchases, increase average transaction sizes, and provide their buyers with the ability to pay over time.  Afterpay is deeply committed to helping people spend responsibly without incurring service fees for those who pay on time, interest, or revolving debt, and supports consumers in a number of countries across APAC, North America and Europe (including under its Clearpay brand).

"By combining with Square, we will further accelerate our growth in the U.S. and globally, offer access to a new category of in-person merchants, and provide a broader platform of new and valuable capabilities and services to our merchants and consumers.  We are fully aligned with Square's purpose and, together, we hope to continue redefining financial wellness and responsible spending for our customers," said Anthony Eisen and Nick Molnar, Afterpay Co-Founders and Co-CEOs.  "The transaction marks an important recognition of the Australian technology sector as homegrown innovation continues to be shared more broadly throughout the world.  It also provides our shareholders with the opportunity to be a part of future growth of an innovative company aligned with our vision."

For Square, BNPL presents an attractive opportunity supported by shifting consumer preferences away from traditional credit, especially among younger consumers, consistent demand from merchants for new ways to grow their sales, and the global growth in omnichannel commerce.  Combined, Square and Afterpay's complementary businesses present an opportunity to drive growth across multiple strategic levers, including:

- **Enhance both the Seller and Cash App ecosystems**. Afterpay's global merchant base will accelerate Square's growth with larger sellers and expansion into new geographies, while helping to drive further acquisition of new Square sellers. Afterpay will expand Cash App's growing product offering, enable customers to manage their repayments, and help customers discover new merchants when the Afterpay App is integrated into Cash App.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- **Bring added value, differentiation, and scale to Afterpay**. Afterpay will benefit from Square's large and growing customer base of more than 70 million annual transacting active Cash App customers and millions of sellers, which will expand Afterpay's reach and growth both online and in-person. Afterpay consumers will receive the benefits of Cash App's financial tools, including money transfer, stock and Bitcoin purchases, Cash Boost, and more.
- **Drive long-term growth with meaningful revenue synergy opportunities**. Square believes Afterpay will be accretive to gross profit growth with a modest decrease in Adjusted EBITDA margins expected in the first year after completion of the transaction. Square sees an opportunity to invest behind Afterpay's strong unit economics as well as attractive growth synergies, including the opportunity to introduce offerings and drive incremental growth for sellers and increased engagement for Cash App customers.

Afterpay's Co-Founders and Co-CEOs will join Square upon completion of the transaction and help lead Afterpay's respective merchant and consumer businesses, as part of Square's Seller and Cash App ecosystems. Square will appoint one Afterpay director as a member of the Square Board following closing.

***

**Transaction Terms**

Under the terms of the Scheme Implementation Deed, which has been approved by the members of the Boards of Directors of both Square and Afterpay, Afterpay shareholders will receive a fixed exchange ratio of 0.375 shares of Square Class A common stock for each Afterpay ordinary share they hold on the record date. Square may elect to pay 1% of total consideration in cash.

Square has agreed to establish a secondary listing on the Australian Securities Exchange (ASX) to allow Afterpay shareholders to trade Square shares via CHESS Depositary Interests (CDIs) on the ASX. Afterpay shareholders will be able to elect whether to receive the scheme consideration in NYSE listed Square Class A common stock or CDIs. The CDIs listed on the ASX are expected to be eligible for S&P index inclusion in Australia.

Based on Square's closing price of US$247.26 on July 30, 2021, this represents an implied transaction price of approximately A$126.21 per Afterpay share, a premium of approximately 30.6% to Afterpay's latest closing price of A$96.66. This represents an approximate 21.9% premium over the 10-day volume weighted average Afterpay share price, and an approximate 10.5% premium over the 30-day volume weighted average Afterpay share price, each as of July 30, 2021. Following completion of the transaction, Afterpay shareholders are expected to own approximately 18.5% of the combined company on a fully diluted basis.

The transaction is subject to conditions precedent as is customary for transactions of this nature, including, among other things, receipt of required regulatory approvals and the approval of shareholders of both companies.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Advisors**

Morgan Stanley & Co. LLC is serving as financial advisor to Square and Wachtell, Lipton, Rosen & Katz and King & Wood Mallesons are serving as its legal advisors. Goldman Sachs and Qatalyst Partners are serving as financial advisors to Afterpay, Highbury Partnership is serving as financial advisor to Afterpay's Board and Gilbert + Tobin and Cravath, Swaine & Moore LLP are serving as Afterpay's legal advisors.

## The Proxy Statement Contains Material Misstatements or Omissions

28. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Square's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

29. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Morgan Stanley; and (ii) the background of the Proposed Transaction.

### *Material Omissions Concerning Morgan Stanley's Financial Analyses*

30. The Proxy Statement omits material information regarding Morgan Stanley's financial analyses.

31. The Proxy Statement describes Morgan Stanley's fairness opinion, and the various valuation analyses it performed in support of its opinion. However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Square's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

32.     With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy Statement fails to identify each of the comparable companies observed in the analysis and disclose the individual multiples and financial metrics for each of the comparable companies.

33.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the levered free cash flows for both Square and Afterpay used in the analyses; (ii) specific range of terminal values Perella Weinberg calculated for each of the projection cases utilized in the analysis; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 8.0% to 10.0% for Afterpay and 10.0% to 12.0% for Square; and (iv) quantification of the net debt and non-controlling interest used in the analyses.

34.     With respect to Morgan Stanley's *Precedent Transactions Premia* analysis, the Proxy Statement fails to identify each of the transactions observed in the analysis and disclose the premiums for each of the transactions observed.

35.     With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets* analysis, the Proxy Statement fails to identify each of the price targets observed and the source of the analyst price targets.

36.     Without such undisclosed information, Square stockholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Morgan Stanley's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

37.     The omission of this material information renders the statements in the "Opinion of Square's Financial Adviser" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

38.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

39.     The Proxy Statement sets forth that:

> [i]n light of his service on Afterpay's U.S. Advisory Board and his equity interest in Afterpay (as further described in the section "—*Interests of Square Executive Officers and Directors in the Transaction*"), Dr. Lawrence Summers, who had recused himself from portions of prior deliberations of Square's board of directors regarding the Transaction, did not attend the meeting or vote on the Transaction.

Proxy Statement at 66.  The Proxy Statement fails, however, to disclose the specific details of each time Summers recused himself from deliberations of the Board regarding the Proposed Transaction, including the dates of each circumstance.

40.     The omission of this material information renders the statements in the "Background of the Transaction" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

41.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Square will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

42.     Plaintiff repeats all previous allegations as if set forth in full.

43.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

44.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

45.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

46.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

47.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

48.     Plaintiff repeats all previous allegations as if set forth in full.

49.     The Individual Defendants acted as controlling persons of Square within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Square, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

52.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Square's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Square, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Square stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

Dated: October 13, 2021

**WEISSLAW LLP**
Joel E. Elkins

2

3

By: */s/  Joel E. Elkins*

4

Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone:  310/208-2800
Facsimile:  310/209-2348
      -and-
Richard A. Acocelli
305 Broadway, 7th Floor
New York, NY  10007
Telephone: 212/682-3025
Facsimile:  212/682-3010

5

6

7

8

9

10

11

*Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS